170 N.J. Super. 20 (1979)
405 A.2d 466
ULYSSES G. BROOKS AND HELEN F. BROOKS, HIS WIFE, PLAINTIFFS-APPELLANTS,
v.
NEW JERSEY MANUFACTURERS INSURANCE CO., LOCAL UNION # 126 GLASS BOTTLE BLOWERS ASSOCIATION OF THE UNITED STATES AND CANADA AND INTERNATIONAL UNION OF THE GLASS BOTTLE BLOWERS OF THE UNITED STATES AND CANADA, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 30, 1979.
Decided July 27, 1979.
*23 Before Judges ALLCORN, SEIDMAN and BOTTER.
Mr. Thomas J. Vesper argued the cause for appellants (Messrs. Valore, McAllister, Aron & Westmoreland, attorneys; Mr. Carl Valore, Jr., on the brief).
Mr. Richard D. Catenacci argued the cause for respondent New Jersey Manufacturers Insurance Co. (Messrs. Connell, Foley & Geiser, attorneys; Mr. Catenacci of counsel and on the brief).
*24 Mr. Michael A. Kaplan argued the cause for respondent Local Union # 126, etc. (Messrs. Tomar, Parks, Seliger, Simonoff & Adourian, attorneys; Mr. Kaplan, on the brief).
Ms. Mary Maudsley Reiss argued the cause for respondent International Union, etc. (Messrs. Cooper, Perskie, Katzman, April, Niedelman & Wagenheim, attorneys; Mr. Louis Niedelman and Ms. Reiss, on the brief).
The opinion of the court was delivered by SEIDMAN, J.A.D.
The only significant issue presented by this appeal is whether a member of a labor union, injured while at work, may sue the union in a negligence action for the claimed failure of the union's representatives on the plant safety committee to "report and remedy" an allegedly defective machine which caused the injury. This issue has not been considered in any reported case in this State; at least, none has been cited to us and our own research has not uncovered any. However, as will appear later herein, it has been dealt with elsewhere in federal and state courts.
Plaintiff Ulysses G. Brooks was employed as a maintenance mechanic by Wheatons Plasti-Cote Corporation at its plant in Mays Landing. He sustained an injury to his arm while working on a machine, the safety switch of which had been disconnected, and in due course received a worker's compensation award. A negligence suit was instituted thereafter (his wife joining per quod) against New Jersey Manufacturers Insurance Company (insurer), the employer's compensation carrier; Local Union # 126, Glass Bottle Blowers Association of the United States and Canada (Local), of which plaintiff was a member, and, by amended complaint, International Union of the Glass Bottle Blowers of the United States and Canada (International).
The complaint charged the insurer with negligently failing to discover or remedy the hazard in the course of its inspection of the plant. The Local's negligence was stated to be the breach *25 by its safety committee of the latter's duty to report and remedy unsafe conditions in the plant. As to the International, it is stipulated that the only basis for liability on its part was vicarious in that the Local forwarded to it a portion of the members' dues.
The Local and the International moved for summary judgment. Both motions were granted, the trial judge ruling, with respect to the former, that the safety committee owed no duty to plaintiff as a matter of law, and further, since the members of the committee were either coworkers or management officials, plaintiff's sole remedy was under the workers' compensation statute. The trial judge found nothing in the agreement between the International and the Local which created any obligation on the part of the International inuring to the benefit of plaintiff. Summary judgment was also entered in favor of the insurer on the ground that any inspection it may have made was of the type on which the insured would not rely and, in fact, did not rely.
We are satisfied that the trial judge correctly entered summary judgment in favor of the insurer. The unrefuted facts are that a representative of the insurer would visit the plant about once a year and, in the company of the plant's assistant manager, make an "eyeball tour" or "walk-through" of the plant; that safety was the sole responsibility of management, and that the company did not in any way rely on the insurer's annual tour of the plant. The insurer was not under a contractual obligation to inspect the plant. The policy provided that the insurer would be "permitted but not obligated" to make such inspection, and, additionally, that "neither the right to make inspections nor the making thereof * * * shall constitute an undertaking on behalf of or for the benefit of the insured or others, to determine or warrant that such work places, operations, machinery or equipment are safe." On similar facts, we recently held in Jackson v. N.J. Mfrs. Ins. Co., 166 N.J. Super. 448, 456-460 (App.Div. 1979), that plaintiff there failed to establish *26 a cause of action against the insurer. Jackson is applicable here. See also, Viducich v. Greater N.Y. Mut. Ins. Co., 80 N.J. Super. 15, 23 (App.Div. 1963), certif. den. 41 N.J. 129 (1963); Restatement, Torts 2d, §§ 323, 324A (1965).
Plaintiff's argument respecting International's "vicarious" liability is limited to one paragraph in his brief, and is completely unsupported by case or statutory law. His concept seems to be that since no affidavits or other supporting papers were filed by International delineating its relationship with the Local, "there appears no basis for granting the international union summary judgment." Since defendant challenged the existence of any duty owed to plaintiff, the latter bore the burden of establishing such duty. He failed to do so. The record is devoid of any facts from which any duty owed by International to plaintiff can be spelled out. See Meistrich v. Casino Arena Attractions, Inc., 31 N.J. 44, 56 (1959).
The thrust of plaintiff's argument, as it relates to the Local, is the union's undertaking "by affirmative conduct the recognition of a duty to safeguard its employees of known or discoverable hazards." He contends that genuine issues of fact exist as to whether such duty of care was owed by the Local to its members, whether there was a breach of that duty, and whether plaintiff's injury was proximately caused by the breach, thus precluding summary judgment. Judson v. Peoples Bank and Trust Co. of Westfield, 17 N.J. 67, 74 (1954). The Local's response is that its duty was one of fair representation, contractually imposed upon it by the collective bargaining agreement, and that, under governing federal labor law, it breached no duty owed to plaintiff.
It appears that the plant where plaintiff worked had a safety committee consisting of employer and union representatives. The pertinent article in the collective bargaining agreement between the employer and the union, after "recogniz[ing] the importance of an effective safety program," provided for the appointment by the Local's president of "not more than three (3) *27 members to the Plasti-Cote Plant Safety Committee." Except to require the committee to record its "reports and recommendations * * * in minutes which shall be made available to all participants," the article did not detail any specific duties or responsibilities of the committee. However, according to the deposition of the Local's president, the purpose of the committee was to meet with and make recommendations to management, which would then implement them at its discretion. He said that it was not the function of the committee to inspect the plant for hazardous conditions. The company's general manager acknowledged in his deposition that the safety program was the sole responsibility of management. The assistant plant manager, who was in charge of safety and the company's representative on the committee, said that management used the committee "to get from the floor information on conditions, unsafe conditions, and to have ongoing communications with the employees on the floor."
The record further indicates that the safety switch of the machine which caused injury to plaintiff had been disconnected prior to the accident. Of the three union members on the committee, one said in a deposition that although the disconnected safety switch was a matter of general knowledge within the plant, she never raised the issue at any meeting of the committee; another, confirming the existence of the condition, said that she also did not report it to the committee because none of the workers complained about it; the third member claimed he was unaware that the switch was not operating until after the accident. The Local's vice-president maintained in her deposition that she had informed management of the switch prior to the accident; however, the plant's assistant manager denied receiving any report of the condition.
While the gravamen of plaintiff's complaint, insofar as it relates to the Local, is couched in common law negligence terms, i.e., that the union had a safety committee "which owed the duty to plaintiff to report * * * any unsafe condition in the *28 plant," and that the committee "failed to perform or negligently performed its duty to plaintiff," it does not necessarily follow that a union member may maintain an action for damages against his union by reason of such alleged breach of duty.
The trial judge's rationale in granting summary judgment was that there was "no breach of a duty which [the Local] * * owed to this plaintiff which was breached [sic] and which was a proximate cause of these injuries," and, additionally, since all the union members of the committee were either coworkers or members of management, plaintiff's exclusive remedy was under the State's workers' compensation statute. But the latter ground, assuming its correctness otherwise, is irrelevant here, in that plaintiff's asserted cause of action was against the union and not the individual members of the safety committee. As for the other ground, the issue is not whether the Local breached a duty owed to plaintiff; rather, as indicated, it is whether such breach, if there was one, would nevertheless entitle plaintiff to maintain this lawsuit against the Local.
It is thoroughly clear that any obligation the Local may have had with respect to safe working conditions at the plant existed, if at all, solely by reason of the collective bargaining agreement. But while the agreement dealt with safety, it did so only to a limited extent. The Local's role was simply to appoint the union members of the plant safety committee. The function of this committee, on which management was also represented, was to report to management on unsafe working conditions that came to its attention, to make recommendations with respect thereto, and to maintain minutes of its reports and recommendations. The agreement did not impose upon the Local or its committee members the affirmative obligation to remedy defects or to make the plant reasonably safe for the employees; that traditional responsibility remained with the employer and was in no way diminished by the agreement. Consequently, if liability is to attach to the Local, it can only be because of the alleged omission of the union's representatives on the safety committee *29 to see that a report and recommendation was made to management with respect to the disconnected safety switch on the machine in question.
Here, the parties sharply diverge. Plaintiff argues that the safety committee was a duly organized primary activity of the Local. He contends that "a labor union is responsible for torts that are committed in connection with lawful primary labor activities." The position of the Local, as indicated earlier, is that its only obligation to its members was that of fair representation, a subject matter preempted by federal law, and that as a matter of law there was no breach of that duty.
It must be emphasized that we are not concerned in this case with the right of a union member to sue his union for damages resulting from its commission of a common law tort unrelated to a collective bargaining agreement. See 48 Am.Jur.2d, Labor and Labor Relations, § 483 at 371; Annotation, "Liability of labor union or its membership for torts committed by officers, members, pickets, or others, in connection with lawful primary labor activities," 36 A.L.R.3d 405 (1971); International Union, U.A.A. & A.I.W. v. Russell, 356 U.S. 634, 635, 78 S.Ct. 932, 2 L.Ed.2d 1030 (1958). The Local concedes that such right exists. Rather, the lawsuit charges that the union, through its representatives, breached that portion of the collective bargaining agreement relating to safety by negligently failing to bring to the attention of the safety committee the alleged hazard created by the disconnected safety switch and to make a recommendation with respect thereto. As we indicated earlier, we find nothing in the collective bargaining agreement or elsewhere in the record imposing upon the safety committee the duty of inspecting the plant in order to discover unsafe working conditions or to remedy such conditions when found.
The position of the Local is that its power under the collective bargaining agreement was limited to advising the company of an unsafe condition and to making a recommendation with *30 regard thereto. It argues that this duty was one of fair representation, a subject matter preempted by Congress through the passage of the Labor Management Relations Act, 29 U.S.C.A. § 141 et seq., and that under governing federal law it did not breach that duty.
We assume that the employer in this case is engaged in interstate commerce; the record is not to the contrary, and none of the parties maintains otherwise. The Labor Management Relations Act declares unions to be capable of suing or being sued as an entity for breach of collective bargaining agreements. The statute creates substantive rights in this regard and makes them enforceable. Donnelly v. United Fruit Co., 40 N.J. 61, 73 (1963). While § 301 of the statute permits suit to be brought in any federal district court for violation of contracts between an employer and a labor organization representing employees, jurisdiction to enforce these rights is not limited to the federal courts; state courts have concurrent jurisdiction in such matters. Id. at 74. See Smith v. Evening News Ass'n, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962); Blum v. International Ass'n of Machinists, AFL-CIO, 80 N.J. Super. 37, 41 (App.Div. 1963), aff'd 42 N.J. 389 (1964). But where the jurisdiction of a state court is involved, federal substantive law controls, if in conflict with state law on the subject. Donnelly, supra, 40 N.J. at 77-78; Standard Motor Freight, Inc. v. Local Union No. 560, 49 N.J. 83, 86, (1967).
As the exclusive bargaining representative of employees, a union is obligated to represent all members of the unit with "complete good faith and honesty of purpose," Donnelly, supra 40 N.J. at 80, and to enforce fairly the provisions of any collective bargaining agreement. Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964). Although an employee is not a nominal or formal party to a collective bargaining agreement, the "rights, duties and benefits of his employment are so created and controlled by the agreement made in his behalf by his statutory representative, the union, that for some *31 purposes, at least, he ought to be regarded as a third-party beneficiary in substance as well as in spirit, or as possessing independent rights under section 9(a) of the Labor Management Relations Act * * *." Donnelly, supra, 40 N.J. at 81-82. Thus, where the statutory duty of fair representation is breached, the aggrieved union member may assert a cause of action for damages against the union, and may do so in a state court, although in such case, as we have said, federal law governs the cause of action. Vaca v. Sipes, 386 U.S. 171, 177, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).
In Bryant v. International Union, U.M.W. of America, 467 F. 2d 1 (6 Cir.1972), cert. den. 410 U.S. 930, 93 S.Ct. 1370, 35 L.Ed.2d 592 (1973), representatives of the estates of miners killed in a mine explosion, after proceeding to obtain recovery under the workers' compensation law of the state, sued the employer and the union for damages, contending that both had failed to perform their duties under the collective bargaining agreement, into which was incorporated a document known as the Federal Mine Safety Code. The allegation as to the union was its failure to enforce compliance with the Code. Summary judgment was granted as to both defendants. The appeal was only as to the union. Since the suit was ostensibly brought under § 301 of the Labor Management Relations Act, the issue of tort was not involved; however, the opinion is helpful in its explanation and application of pertinent federal law. The court questioned whether the action was one grounded in § 301, noting language in the complaint suggesting that the suit might be viewed as one seeking recompense for the union's breach of its duty of fair representation. 467 F.2d at 2. The conclusion reached was that the form of the action was immaterial, since in neither case could plaintiff prevail. The court determined, contrary to the contentions advanced by the plaintiffs, that the agreement as worded did not impose upon the union the duty either of enforcing the safety code or of making periodic inspections of the mine. Although the agreement established a mine safety *32 committee composed of union members, the pertinent provision was that the committee "may inspect any mine development or equipment [emphasis supplied]." This was held by the court to be permissive rather than obligatory, negating the possibility that any duty was to be created. Id. at 5. Furthermore, as to enforcement, while the court found that the agreement gave the union the power to compel the mine operators to correct violations reported by federal mine inspectors, it did not require the union to exercise such power. In the circumstances, the court could find no basis for concluding that the union had breached any duty created by the agreement or by the obligation of fair representation. The court said:
* * * It would be a mistake of vast proportion to read every power granted the union by management as creating a corollary contract right in the employee as against the union. Such interpretation of collective bargaining agreements would simply deter unions from engaging in the unfettered give and take negotiation which lies at the heart of the collective bargaining agreement. [at 5]
* * * * * * * *
* * * To saddle labor unions with liability for the mine operators' failure to comply with standards introduced into the contract at the union's bidding would simply be to discourage the inclusion of similar or more effective standards in later contracts. [at 6]
A comparable contract provision was involved in House v. Mine Safety Appliances Co., 417 F. Supp. 939 (D.Idaho 1976). The collective bargaining agreement in that case established a safety committee consisting of three union members and three management members. The function of the committee was "to advise with the Plant Manager concerning safety and health matters." In an action against employers arising out of a mine fire, the employers filed third-party complaints against the union, asserting a right of indemnification and contribution, derived from an alleged right of union members to sue the union. The third-party complaint alleged that the union undertook a duty to act as accident prevention representatives and *33 safety enforcers under the labor agreement for the benefit of union members, and that the union was negligent in allowing unsafe conditions to exist in the mine, failing to exercise due care for the health and safety of its members and in failing to provide them a reasonably safe place in which to work.
Since the court recognized that the third-party defendants' complaint was predicated on such right, if any, as the union members might have to sue their union, the court proceeded to "analyze a supposed cause of action by a union member against his union." It began by observing that while under federal law a union member may sue his union for breach of a duty of fair representation, the third-party plaintiffs did not assert such breach; rather, they relied upon an alleged common law tort committed by the union in negligently performing a duty assumed under the collective bargaining agreement. 417 F. Supp. at 941-942. The court rejected the contention, holding that the case was dissimilar to suits against unions for such matters as, e.g., negligent maintenance of union property and intentional torts committed by union members at a union meeting. The court said:
The distinguishing fact is that here an action for damages (if the union members or personal representatives had instituted suit) flows from a contractual obligation undertaken by the union to benefit its members and their working conditions. If liability could lie with the union under the common law, it would be because of negligent performance of a duty assumed and not a duty otherwise imposed by the common law. As this opinion hereinafter makes clear, however, the duty is one arising under federal law, namely, the duty of fair representation. [at 943]
* * * * * * * *
In light of the collective bargaining agreement in this case, a theory of common-law negligence for breach of an alleged safety duty is inextricably intertwined and embodied in the union's duty of fair representation. The duty of fair representation is governed by federal law, Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) and federal law dictates that the exclusive duty owed in the context of this case is the duty of fair representation. Since the third-party plaintiffs categorically disclaim any reliance on a breach of fair *34 representation, they have failed to state a claim for which relief can be granted. [at 945][1]
The court expressed the further view that since it has traditionally been the duty of employers to furnish a safe place to work,
* * * [t]o permit a sanction of legal liability to accompany a union's exercise of responsibility in safety matters, together with either loss shifting or sharing, would weaken the duty of the employer at the expense of the union and its members. * * * Moreover, the result is readily apparent, if unions could be held liable in cases such as this  there would be no negotiation on safety matters. To impose liability on the union in a case such as this is against public policy and would seriously disrupt labor relations policy. [at 946-947]
The case of Helton v. Hake, 564 S.W.2d 313 (Mo. App. 1978) (see n. 1, supra), seems to strike a discordant note. But the facts of that case are clearly distinguishable, so that we need not pass judgment on the correctness of the holding there. But see Carollo v. Forty-Eight Insulation, Inc., 252 Pa.Super. 422, 381 A.2d 990, 995 (Super.Ct. 1977). As explained in the footnote, the action against the union was for the wrongful death of one of its members, a construction worker who came into contact with a high tension wire and was electrocuted. In holding that a common law negligence action could be maintained, even though the duty allegedly breached stemmed from the collective bargaining agreement, the court construed the agreement to impose upon the union, through its shop steward, an affirmative duty to *35 enforce the work rules, including the safeguarding of high tension wires, independent of interference from the employer. The court said that the union had taken over for itself a managerial function, "the full independent right to enforce safety requirements," 564 S.W.2d at 321, and, therefore, the defendants should be held to answer for their breach of tort duty to use due care. However, the court did not consider its decision to be necessarily at variance with House v. Mine Safety Appliances Co., supra:
We can readily agree that when a union assumes only an advisory capacity with respect to safety and the enforcement of safety regulations so far as the union is concerned is limited to only the usual grievance machinery, then the union is carrying out purely a representative function on behalf of its members and should be limited in its responsibility to performing that representation in a fair and honest manner. [at 320][2]
We are convinced that, on the facts here present, the union's limited duty with respect to plant safety is properly classified as one of fair representation arising under federal law. House v. Mine Safety Appliances Co., supra. The complaint in this case alleged that the Local "negligently failed to perform or negligently performed" its duty to plaintiff. But negligence does not constitute a breach of the statutory duty of fair representation. See Dente v. International Org. of Masters, Mates & P., Loc. 90, 492 F.2d 10, 12, n. 3 (9 Cir.1973), cert. den. 417 U.S. 910, 94 S.Ct. 2607, 41 L.Ed.2d 214 (1974); Helton v. Hake, supra, 386 F. Supp. at 1030. The duty of fair representation obligates the union to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid *36 arbitrary conduct. Vaca v. Sipes, supra, 386 U.S. at 177, 87 S.Ct. 903. A breach of that duty occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith. Id. at 190, 87 S.Ct. 903. Plaintiff here did not allege any such breach in his complaint against the local.
In any event, we do not view the union's privilege of appointing members to the plant safety committee for the purpose of reporting on safety conditions and making recommendations thereon to the employer as creating the kind of obligation or duty on the union's part which, if breached, would give rise to a cause of action for damages against it in favor of an injured employee.
Affirmed.
NOTES
[1] But see Helton v. Hake, 386 F. Supp. 1027 (W.D.Mo. 1974), in which suit was instituted against a union and its representatives by the surviving spouse and minor children of a construction worker who was electrocuted on a job when he came into contact with a high tension wire. The collective bargaining contract provided that the job steward "shall see" that the working rules are complied with, including one that provided that "no work shall be done in the immediate area of high tension lines until the power has been shut off, or the lines insulated, or the safety of the members of the bargaining unit otherwise provided for." The complaint charged the job steward with negligently failing to enforce the rule and in permitting decedent to work in the immediate area of the high tension lines. The court granted a motion to remand the cause to the state court, holding that the complaint did not allege any breach of fair representation but only a negligent failure to perform a duty promised under the contract. Helton was criticized in House v. Mine Safety Appliances Co., supra, 417 F. Supp. at 944. And see, infra, Helton v. Hake, 564 S.W.2d 313 (Mo. App. 1978).
[2] See Brough v. United Steelworkers of America, AFL-CIO, 437 F.2d 748 (1 Cir.1971), where a negligence count in the complaint was remanded to the state court following the dismissal of the remaining count charging breach of the union's duty of fair representation. The negligence cause of action was founded upon a New Hampshire common law principle that an employer's safety advisors, regardless of motivation or contractual relationship, are subject to tort liability if their machinery inspection negligently failed to discover a defect, with the result that an employee is injured.